UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CARL THOMPSON, | Case No. 2:19-CV-1152 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| LAMPLIGHT VILLAGE@CENTENNIAL SPRINGS HOMEOWNERS ASSOCIATION, | |
| Defendant(s). | |

Presently before the court is plaintiff Thompson's ("Thompson") application for judgment. (ECF No. 9). Garnishee QBE Insurance Corporation ("QBE") responded and filed a countermotion for conditions upon any such judgment. (ECF Nos. 13, 14). Thompson replied and responded, respectively. (ECF Nos. 16, 17). QBE replied regarding its countermotion. (ECF No. 19).

I. **Facts**

The instant garnishment action arises out of a state court tort case that has been pending for several years. (ECF No. 12 at 2–5). Lamplight Village @ Centennial Springs Homeowners' Association ("Lamplight") installed defective swing sets on its playground. *Id.* at 2. The top bar of the swing set would consistently break and fall. *Id.* Lamplight would repair the swing set, but the bar would break again. *Id.* Lamplight received a replacement from the manufacturer, which also broke. *Id.* at 2–3. The manufacturer sent another replacement. *Id.* at 3. The new replacement broke, and the top cross bar struck Thompson in the head. *Id.* The swing set "crushed [Thompson's] skull" and caused bleeding in his brain. *Id.*

**James C. Mahan**
**U.S. District Judge**

Thompson sued the swing set manufacturer, the installer, and Lamplight in state court in March 2014. *Id.* Thompson had previously contacted Lamplight "specifically asking Lamplight to notify its carrier." *Id.* QBE received notice of the action, assumed control of Lamplight's defense, and chose counsel. *Id.* at 3–4. Although the other defendants settled the matter, Lamplight rejected an offer of judgment that would have required it to tender $316,333.34, a settlement offer for its $2,000,000 policy limits, and a "high-low" settlement. *Id.* at 4.

Thompson won at trial. *Id.* The jury awarded him $10,000,000 in compensatory damages and an additional $10,000,000 in punitive damages. *Id.* After QBE rejected Thompson's offer to settle the claims for $18,500,000, the state district court entered an amended judgment against Lamplight for $24,787,550.47, including fees and costs. *Id.* QBE moved to intervene in the action, but the motion was denied. *Id.* at 5. Lamplight appealed the judgment, and the appeal is still pending. (ECF No. 18 at 3).

Thompson served QBE with a writ of garnishment on June 21, 2019. *Id.* at 4. QBE removed the garnishment action on July 2, and Thompson now applies for judgment. (ECF Nos. 1, 9).

## II. Legal Standard

Nevada garnishment actions are governed by Nevada Revised Statute ("NRS") Chapter 31. NRS 31.300 provides as follows:

1. If the answer of the garnishee shows that the garnishee has personal property of any kind in his or her possession, or under his or her control, belonging to the defendant, the court, upon application of the plaintiff with written notice to the garnishee at the address supplied on the answers to the interrogatories or to the attorney for the garnishee, shall enter judgment that the garnishee deliver the same to the sheriff, and if the plaintiff recover judgment against the defendant in the action, such property or so much thereof as may be necessary shall be sold as upon execution, and the proceeds applied toward the satisfaction of such judgment, together with the costs of the action and proceedings, and if there be a surplus of such property, or of the proceeds thereof, it shall be restored to the defendant.

2. If the answer shows that the garnishee is in possession of money, debts, credits or choses in action, or has any of such items under the garnishee's control, or is in any way indebted to the defendant, then, if the plaintiff recover judgment against the defendant in the action, the court shall also, upon application of the plaintiff with written notice to the garnishee or the garnishee's attorney in the manner provided in subsection 1, enter judgment in favor of the defendant for

> the use of the plaintiff against the garnishee for the amount of the indebtedness, choses in action, debts or credits admitted in the answer; but the judgment against the garnishee shall not be for a greater sum than is necessary to satisfy the judgment of the plaintiff against the defendant, together with costs as aforesaid; and in no case shall the garnishee be chargeable with costs unless the garnishee's answer shall be successfully controverted as hereinafter provided.

NEV. REV. STAT. § 31.300.

### III. Discussion

QBE does not dispute that Thompson is entitled to Lamplight's $2,000,000 policy limit held by QBE. (*See generally* ECF No. 14). In fact, "QBE's claims administrator, Armour Risk Management, Inc.,[1] offered to pay Thompson the QBE policy limit of $2,000,000." *Id.* at 2. Indeed, QBE's answers to the writ of garnishment included the admission that QBE "advised [Thompson] of its willingness to tender payment of the [p]olicy's $2,000,000 per-occurrence indemnity limit in partial satisfaction of the amount of the judgment, subject to certain conditions stated in that correspondence." (ECF No. 4, Exhibit 3 at 2).

Moreover, the state court's order refers to a settlement agreement between Lamplight and Thompson, which provides that "Thompson shall not enforce or collect the [u[ltimate [f]inal [j]udgment against Lamplight *except with regard to Lamplight's insurance*." *Id.*, Exhibit 6 at 5 (emphasis added). Thus, it is undisputed that Thompson is entitled to the $2,000,000 that QBE holds for the benefit of its insured, Lamplight.

Accordingly, Thompson's application for judgment is granted.

However, QBE conditioned its payment of the $2,000,000 policy limit as follows:

> (1) the payment was not to be construed as an admission, compromise, settlement or voluntary payment of any kind and would not be deemed as a waiver, relinquishment, or impairment of any right to prosecute an appeal or seek other relief related to the judgment against Lamplight; and (2) in the event that an appeal of the judgment is successful and the judgment is reversed and/or vacated, the payment must be repaid to QBE.

(ECF No. 14 at 3). QBE now asks that the court—should it order judgment for plaintiffs—to impose those conditions on the judgment. *See generally id.*

---

[1] Armour Risk Management, Inc. and QBE are collectively referred to as "QBE."

QBE's countermotion for conditions relies on *Wheeler Springs Plaza, LLC v. Beemon*, 71 P.3d 1258, 1261 (Nev. 2003) ("*Wheeler Springs*"). In *Wheeler Springs*, the Nevada Supreme Court held that:

> actual or potential threat of garnishment or execution is sufficient coercion to avoid a mootness challenge based upon payment of the judgment. Thus, we hold that payment of a judgment only waives the right to appeal or renders the matter moot when the payment is intended to compromise or settle the matter.

*Wheeler Springs*, 71 P.3d at 1261.

Here, QBE is the subject of a garnishment action, which necessarily means that any payment on Thompson's judgment is done under coercion. *Id.* Lamplight has already appealed Thompson's judgment in the underlying state court case. (ECF No. 14 at 6 ("Alternatively, QBE requests that the Court stay or continue Thompson's [a]pplication *until such time as Lamplight's appeal of Thompson's judgment against it is resolved*." (emphasis added))). Thus, any payment made by QBE is not intended to settle the matter, does not waive appeal, and does not moot the issue. *Wheeler Springs*, 71 P.3d at 1261. Indeed, the state court judgment denying QBE's motion to intervene and regarding conditions for stay pending appeal already addressed the issue of Lamplight's appeal:

> Section 1.8 of the settlement agreement provides that "Lamplight shall exercise whatever authority it has to dismiss or forego appealing the [l]awsuit *to the extent allowed by its insurance policy* and applicable law, except that *should refusing to appeal require Lamplight to breach the provisions of its insurance policy, it shall not be required to dismiss or forego an appeal of the [l]awsuit*."

(ECF No. 14, Exhibit 6 at 5 (emphasis added)).

The court will not condition QBE's payment. The remedies available to QBE under *Wheeler Springs* are the result of an operation of law. QBE is not tendering payment with the intent to settle the matter, has not waived appeal (which is currently ongoing), and such payment does not moot the issue. If Lamplight's appeal is successful, QBE remains free to seek repayment pursuant to *Wheeler Springs*.

Accordingly, QBE's countermotion for conditions is denied.

**IV.  Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Thompson's application for judgment (ECF No. 9) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that QBE's countermotion for conditions (ECF No. 14) be, and the same hereby is, DENIED.

The clerk is instructed to enter judgment accordingly and close the case.

DATED October 1, 2019.

_____
UNITED STATES DISTRICT JUDGE